UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CIELO JEAN GIBSON, et al.,<br>    Plaintiffs,<br><br>v.<br><br>FIRST MERCURY INSURANCE<br>COMPANY,<br>    Defendant. | No. 3:21-cv-1522 (SRU) |

### RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant First Mercury Insurance Company ("First Mercury") moved to dismiss the plaintiff models' claims that the insurer breached its obligations to underlying insured gentlemen's clubs by failing to defend and indemnify the clubs in the plaintiffs' underlying lawsuits alleging unlawful use of their images and likenesses. I denied First Mercury's motion to dismiss. First Mercury now moves for reconsideration of that ruling. Although I **grant** First Mercury's motion to reconsider, I conclude that the motion is unmeritorious and **deny** the relief requested upon reconsideration.

I.    **Background**

I assume the parties' familiarity with the factual allegations, controlling policy language, and procedural history of the case, and I recount only the circumstances salient to the motion for reconsideration. I also assume the parties' familiarity with the terms of art adopted in the ruling on the motion to dismiss.

On November 12, 2021, Plaintiffs filed suit. Doc. No. 1. Thereafter, on January 28, 2022, First Mercury moved to dismiss the complaint. Doc. No. 14. After full briefing and oral argument, I denied the motion to dismiss on September 30, 2022. Doc. No. 36 [hereinafter, the

"September 30, 2022 Ruling"]. First Mercury timely moved for reconsideration of the September 30, 2022 Ruling. Doc. No. 37.

## II.     Standard of Review

Local Rule of Civil Procedure 7(c) permits a party to file a motion for reconsideration with seven days of the filing of the decision from which the party seeks relief. D. Conn. Local R. Civ. P. 7(c)(1). Nevertheless, Local Rule 7(c) suggests that motions for reconsideration are disfavored, advising that a motion for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." *Id.* Indeed, the Second Circuit has repeatedly held that "[t]he standard for granting [ ] a motion [for reconsideration] is strict," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and principally appropriate where there has been "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up).

## III.    Discussion

First Mercury presents two arguments in support of its motion for reconsideration. One, it argues that I overlooked relevant data and law when I concluded in the September 30, 2022 Ruling that the Knowing Violation of Rights of Another Exclusion did not apply. Doc. No. 37-1, at 7. Two, it argues that I overlooked controlling data in determining that the Field of Entertainment Endorsement was ambiguous or illusory. *Id.* at 10. I address each issue in turn.

A. <u>Knowing Violation of Rights of Another Exclusion</u>

First Mercury asserts that I overlooked the Underlying Plaintiffs' allegations that the Underlying Defendants, in addition to misappropriating the Underlying Plaintiffs' images, had altered the images and the nature of the alterations. Def's Mem. of Law, Doc. No. 37-1, at 8-10. First Mercury disagrees with my characterization that the altered images were "public," rather than "private," in nature, and it seeks to persuade me that the allegations in the Underlying Lawsuits are tantamount to those in a line of judicial decisions holding that certain acts could not have been done unknowingly. Although I am not persuaded by First Mercury's argument, I accept its invitation to clarify my decision.

In the September 30, 2022 Ruling, I concluded that the Underlying Plaintiffs had pled intentional and non-intentional conduct in the alternative, which "dispose[d] of First Mercury's motion to dismiss the breach of contract and declaratory judgment claims in the instant action, at least with respect to the duty to defend," because the salient portions of the Underlying Defendants' insurance policies did not exclude coverage for allegations of unknowing conduct. Sept. 30, 2022 Ruling, Doc. No. 36, at 18. Specifically:

> The Connecticut and Texas Plaintiffs expressly alleged that the Mr. Happy's Defendants and KHG were "negligent in [their] failure to promulgate policies and procedures concerning the misappropriation" of the plaintiffs' images; that if Mr. Happy's Defendants and KHG had such policies, they "negligently failed to enforce th[em], communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with [f]ederal and [state] law, were not violated;" and that the Mr. Happy's Defendants and KHG were "at least negligent in publishing [Underlying] Plaintiffs' Images. . . ." Conn. Compl., Doc. No. 19-1, at 20 ¶ 147, 22 ¶¶ 155-57; Tex. Compl., Doc. No. 19-2, at 19 ¶ 98, 20-21 ¶¶ 107-09. The Arizona complaint is different, alleging that Liberty "acted at a minimum . . . with reckless indifference" by "expressly permitting, allowing and condoning" the use of the plaintiffs' images on its website and/or social media, and that Liberty acted with "reckless indifference about whether the posting of [the Arizona] Plaintiffs' images . . . would create a false and misleading impression about the [Arizona] Plaintiffs." Ariz. Compl., Doc. No. 19-3, at 18 ¶ 56, 23 ¶ 88.

3

*Id.* First Mercury contended then and contends now that I should treat the Underlying Plaintiffs' allegations of unknowing conduct as allegations of knowing conduct as a matter of law, citing to *Allstate Ins. Co. v. Russell*, 2021 WL 4061403 (N.D. Tex. Sept. 7, 2021). *See* Mem. of Law, Doc. No. 37-1, at 8.

I reasoned in the September 30, 2022 Ruling that the line of precedent on which First Mercury relies is distinguishable because the acts alleged in the purported comparator cases "cannot have been done negligently and without knowledge of the harms they caused." Doc. No. 36, at 21. I explained that "one could not reasonably allege the problems in [those cases] were failure to promulgate policies for employees barring the unauthorized sharing of a colleague's intimate photos, racist victimization of neighbors, or the sexual assault of a minor." *Id.* The crux of the distinction between *Russell* and the instant case arises from the impact of the public nature of the Plaintiffs' allegedly misappropriated and altered photos on the plausibility of the Underlying Plaintiffs' allegations of negligent or recklessly indifferent conduct.

Said differently, Plaintiffs plausibly plead that First Mercury's duty to defend attaches in light of the Underlying Plaintiffs' allegations that the Underlying Defendants negligently supervised their employees or agents and/or with reckless indifference allowed their employees or agents to misappropriate and alter Plaintiffs' images. To explain, I turn to the elements of a negligent supervision claim under Connecticut law, by which a plaintiff must establish that he "suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise." *Burford v. McDonald's Corp.*, 321 F. Supp. 2d 358, 366 (D. Conn. 2004). A defendant employer generally only has a duty of care to protect a plaintiff from an employee's tortious acts where the defendant "knew or reasonably should have known" of the tortious employee's "propensity to engage in that type of tortious conduct." *Id.*

4

Applying the facts of *Russell* to the elements of a negligent supervision claim, a litigant could not plausibly have alleged that the problem giving rise to the unauthorized sharing of the company's former employee's intimate photos by a colleague was the company's failure to promulgate a policy proscribing such an repugnant act, the company's failure to supervise its employees and adequately enforce such a policy, or the company's reckless indifference to the possibility that an employee would take such action.  An employee will only exceedingly rarely have the opportunity to access and the propensity to share the intimate photos of a colleague.  The subject of the *Russell* matter was thus a victim of an exceptional breach of her privacy, a breach so invasive that it shocks the conscience.  The *Russell* decision makes no suggestion that the employer had reason to know that its employee would act so objectionably, and I am skeptical that the conduct giving rise to the breach described therein is the kind of conduct that an employer should reasonably expect from an employee without knowledge or constructive knowledge of the employee's propensity to comport himself or herself in that way.  The conduct at issue in *Russell* was an individual's aberrational act, which is why the law treats that misconduct exceptionally as necessarily intentional.  There, the private nature of the victim's photos rendered the employee's misconduct so aberrant that it was not reasonably foreseeable.

Here, the conduct alleged is reprehensible— but it is materially different.  I am troubled by the extent of sex-based and ethnic stereotyping illustrated in First Mercury's exhibit and that was employed by the person or persons who misappropriated and altered the Plaintiffs' photos.  Nevertheless, I cannot conclude that the breach of Plaintiffs' privacy, and the nature of the alterations, was equivalent to the breach alleged in *Russsell*.  The legally-determinative distinction between *Russell* and the instant matter is that the insurer's duty to defend attaches to any allegation that "falls even *possibly* within the coverage," *Middlesex Ins. Co. v. Mara*, 699 F.

Supp. 2d 439, 448 (D. Conn. 2010), and the public nature of the Plaintiffs' photos rendered reasonably foreseeable that an Underlying Defendant's employee or agent might misappropriate and alter an Underlying Plaintiff's photo, as the Plaintiffs allege occurred. For that reason, I concluded then and conclude now that the Underlying Defendants could plausibly have erred by failing to instruct an employee or agent not to download a photo from the public domain and to alter it, or that the Underlying Defendants could plausibly have erred by being recklessly indifferent to that possibility.

 Indeed, the allegations in this case illustrate how little imagination is needed to contemplate that an Underlying Defendant's employee or agent could have turned to the internet, found one of plaintiff Dessie Mitcheson's centerfold photos from *Maxim* magazine, and downloaded and altered those photos to promote its employer or principal's establishment. *See* Conn. Compl., Doc. No. 19-1, at 7 ¶ 30. Without minimizing the harm Mitcheson alleges, I must consider that the *Maxim* photos are commodities in the public domain in a manner distinguishable from that of the *Russell* victim. And because the Underlying Plaintiffs' images were available in the public domain, then it is at least plausible that the alleged misappropriation arose from an Underlying Defendant's failure to direct its employees or agents not to use the photos despite their availability. In the parlance of a negligent supervision claim, it is at least plausible that the Underlying Defendants should have known that their employee or agent might look to the internet to identify one of the Underlying Plaintiffs' alluring photos, and that the employee or agent might have then misappropriated and altered such photo or photos. For evidence of the plausibility of such misconduct, consider the volume of lawsuits implicating similar legal claims and similar factual predicates as the underlying lawsuits in this case. *See*, *e.g.*, *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 2023 WL 5495277 (5th

Cir. Aug. 25, 2023); *First Mercury Insurance Company v. Triple Location, LLC*, 536 F. Supp. 3d 326 (N.D. Ill. 2021); *Princeton Express v. DM Ventures USA LLC*, 209 F. Supp. 3d 1252, 1254-55 (S.D. Fla. 2016).

Accordingly, First Mercury fails to set forth a basis warranting reconsideration.

B. Field of Entertainment Endorsement

First Mercury next argues that I overlooked controlling data in determining that the Field of Entertainment Endorsement was ambiguous or illusory. *Id*. at 10. In response to that argument, first, I clarify that I determined that the "Field of Entertainment – Limitation of Coverage" Endorsement appears to be ambiguous or illusory as applied to advertising injury. Second, I conclude that there is no reason to reconsider the September 30, 2022 Ruling.

If I "were only to look at the components of the 'personal and advertising definition' that arguably relate strictly to 'advertising,' injuries," as I do, then First Mercury asserts that coverage "would still not be illusory" because, for example, the policy purportedly includes coverage for claims "arising from the Clubs 'use of another's advertising idea in their advertisement,' and such claims are not removed from coverage in the Field of Entertainment Endorsement." Doc. No. 37-1 at 11. Therefore, First Mercury offers, "if the Clubs were sued by a competitor for impermissibly using their advertising strategies . . . that claim would remain covered." *Id.* But First Mercury appears to misread its own policy, because the "Field of Entertainment – Limitation of Coverage" Endorsement does remove coverage for injury arising out of "[u]nauthorized use of . . . ideas" with respect to the business of an insured in the field of entertainment. *Id.* at 12. At a minimum, the policy appears to be ambiguous concerning whether it covers ideas relating to advertising. Having failed to identify any reasonably foreseeable example undermining my conclusion that the Field of Entertainment – Limitation of Coverage"

7

Endorsement appears to be ambiguous or even illusory as applied to advertising injury, First Mercury does not set forth a basis warranting reconsideration.[1]

IV.     **Conclusion**

In light of the foregoing, there is no basis on which to reconsider the Ruling on the Motion to Dismiss, doc. no. 36.  Accordingly, although the motion to reconsider is **granted**, the relief requested upon reconsideration is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of August 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[1] In *Princeton Excess & Surplus Lines Insurance Co. v. A.H.D. Houston, Inc.,* a case arising under similar facts and presenting a similar legal issue, the Fifth Circuit recently concluded after examining a materially identical Field of Entertainment Exclusion under Texas law that the exclusion did not render coverage for advertising injury illusory. 2023 WL 5495277, at *4 (Aug. 25, 2023).  The Fifth Circuit emphasized that the exclusion left in place significant coverage by expressly excepting injuries for the use of another's "advertising idea" from the Field of Entertainment Exclusion, just as First Mercury contends here.  *Id.*  This portion of the Fifth Circuit's decision rested in substantial part on the parties' agreement that the Field of Entertainment Exclusion left in place coverage for advertising injuries.  *Id.* at *5.  Indeed, the plaintiff-appellees affirmatively asserted that the "advertising idea" provision covered their claims of advertising injury based on unauthorized use of their advertising ideas.  *Id.*  Here, the plaintiffs have not conceded that the policy leaves in place coverage for the use of another's advertising idea, and they have not likewise asserted claims for purported unauthorized use of their advertising idea or ideas.  In light of those differences, the *Princeton Express* decision is distinguishable.